1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   LINH TRAN,

11              Plaintiff,

12       v.

13   NOVO NORDISK INC,

14                    Defendant.

CASE NO. C13-2027 MJP

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

15

16       THIS MATTER comes before the Court on Defendant Novo Nordisk, Inc.'s Motion for

17   Summary Judgment.  (Dkt. No. 23.)  Having reviewed the motion, Plaintiff Linh Tran's

18   response, (Dkt. No. 34), and the related record, the Court GRANTS Defendant Novo Nordisk,

19   Inc.'s Motion for Summary Judgment.

20                                    **Background**

21       Plaintiff Linh Tran—an Asian American woman—began her employment with

22   Defendant Novo Nordisk, Inc. ("NNI") on or about November 21, 2005 as a Diabetes Care

23   Specialist ("DCS") II for the Pacific Northwest Region.  (Dkt. No. 1 at 3.)

24

1    Ms. Tran secured several promotions while she was employed at NNI.  (<u>Id.</u> at 5.)  She

2  was promoted from DCS II to Endocrinologist Diabetes Care Specialist ("EDCS") I, then to

3  EDCS II, then to Health Systems Diabetes Care Specialist ("HSDCS") I, and, ultimately, to

4  HSDCS II.  (<u>Id.</u>)

5    While she was employed at NNI, Ms. Tran was also eligible for and took part in NNI's

6  Tuition Assistance Program to complete her Masters in Business Administration ("MBA").

7  (Dkt. No. 1 at 4.)  The terms and conditions of this program are memorialized in a written policy.

8  (Dkt. No. 28-1.)  The policy requires "an employee who voluntarily leaves employment within

9  two years following the date of course completion to refund reimbursed expenses."  (<u>Id.</u> at 3.)

10  Ms. Tran was enrolled in her MBA program from March 2010 to December 2011.  (Dkt. No. 31-

11  1 at 44.)  Ms. Tran received approximately $15,000 in tuition reimbursement from NNI.  (Dkt.

12  No. 30.)

13    Ms. Tran applied for a Regional Field Trainer ("RFT") position with NNI in May of

14  2010.  (Dkt. No. 14 at 6.)  Ms. Tran was not selected for the position; and NNI promoted a male,

15  non-Asian American individual to the position.  (<u>Id.</u>)

16    In October of 2010, an RFT position became available in NNI's Rocky Mountain Region

17  (<u>Id.</u>)  In November 2010, a Regional Support Manager ("RSM") position became available in

18  NNI's Pacific Northwest Region.  (<u>Id.</u> at 6-7.)  Ms. Tran did not apply for these positions.  (<u>Id.</u>)

19    Ms. Tran applied for another RFT position in the Pacific Northwest Region in August of

20  2011.  (<u>Id.</u> at 7.)  Ms. Tran was interviewed for the position.  (<u>Id.</u>)  In October of 2011, NNI

21  selected a male, non-Asian American to fill the RFT position.  (<u>Id.</u>)

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 2

1    In June 2012, an RSM position became available in the West.  (Id. at 8.)  Ms. Tran did

2    not apply for the position.  (Id.)  In July 2012, an RFT position became available in the Pacific

3    Northwest Region.  (Id.)  Ms. Tran did not apply for this position.  (Id. at 13-14.)

4    Ms. Tran left her employment at NNI in July of 2012.  (Dkt. No. 31-1 at 115.)  On July

5    20, 2012, Ms. Tran filed a charge with the Equal Employment Opportunity Commission

6    ("EEOC") alleging she was not selected for RFT and RSM positions that she applied for during

7    her employment with NNI on account of her sex and race.  (Id. at 117.)  In her charge, she also

8    alleged that she left her employment with NNI due to the lack of support from management and

9    because she experienced a hostile work environment.  (Id.)

10    Ms. Tran filed suit against NNI on November 11, 2013.  (Dkt. No. 1.)  Ms. Tran alleges

11    five claims of race and sex-based discrimination stemming from NNI's failure to promote her to

12    RFT and RSM positions and one claim of hostile work environment under Title VII of the Civil

13    Rights Act of 1964 ("Title VII").  (Id. at 15-22.)  By her complaint, Ms. Tran seeks declaratory

14    relief, back and front pay damages, compensatory damages, punitive damages, and attorney's

15    fees and costs.  (Id. at 22-23.)

16    On February 10, 2014, NNI answered Ms. Tran's complaint and filed a counter-claim

17    against Ms. Tran for breach of implied-in-fact contract, alleging Ms. Tran owes NNI $15,331.34

18    plus interest for the tuition assistance she received because she left NNI within two years of

19    completing her MBA courses.  (Dkt. No. 14 at 24-26.)

20    NNI moves for summary judgment on all of Ms. Tran's claims and on its sole counter-

21    claim.  (Dkt. No. 23.)  The Court considers each of NNI's arguments in turn.

22    /

23    /

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 3

1

<u>**Discussion/Analysis**</u>

2

**I.    Request to Strike Material**

3

In its reply brief, NNI contends the Court should not consider the exhibits attached to Ms.

4

Tran's response brief because they are not authenticated.  (Dkt. No. 36 at 5) (citing <u>Orr v. Bank</u>

5

<u>of Amer., NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).)  Because NNI does not explain why the

6

exhibits attached to Ms. Tran's response are not properly authenticated, the Court does not reach

7

NNI's argument.  (<u>Id.</u>)

8

**II.    Motion for Summary Judgment**

9

**A.  Legal Standard Summary Judgment**

10

Summary judgment is not warranted if a material issue of fact exists for trial.  <u>Warren v.</u>

11

<u>City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996).  The

12

underlying facts are viewed in the light most favorable to the party opposing the motion.

13

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary

14

judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

15

the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party

16

moving for summary judgment has the burden to show initially the absence of a genuine issue

17

concerning any material fact.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970).  Once the

18

moving party has met its initial burden, however, the burden shifts to the nonmoving party to

19

establish the existence of an issue of fact regarding an element essential to that party's case, and

20

on which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

21

323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but

22

instead must have evidence showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

23

/

24

/

**B.  Legal Standard Title VII**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

A Title VII plaintiff can make out a prima facie case of discrimination by showing that: (1) she belongs to a statutorily protected class; (2) she applied for and was qualified for an available position; (3) she was rejected despite her qualifications; and (4) after the rejection, the position remained available and the employer continued to review applicants possessing comparable qualifications.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

To establish a prima facie case for hostile work environment under Title VII, a plaintiff must show the following: (1) she was subjected to verbal or physical conduct because of her sex or race; (2) the conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.  <u>Manatt v. Bank of Am., NA</u>, 339 F.3d 792, 798 (9th Cir. 2003).

**C.  Ms. Tran's First Three Claims**

Ms. Tran's first three claims under Title VII are: (1) NNI discriminated against Ms. Tran by failing to promote her to the RFT position in May 2010; (2) NNI discriminated against Ms. Tran by failing to promote her to the RFT and RSM positions in October and November of 2010; and (3) NNI discriminated against Ms. Tran by failing to promote her to the RFT position in October 2011.  (Dkt. No. 1 at 15-18.)

NNI contends Ms. Tran's first three claims under Title VII are time-barred because they fall outside of the 180-day filing period.  (Dkt. No. 23 at 20-21.)  Ms. Tran argues that the 300-

1  day filing period applies, rather than the 180-day filing period, because her EEOC charge was

2  "cross-filed/dual-filed with the [Washington State Human Rights Commission]" in light of a

3  "work-sharing agreement between the state agency and the EEOC." (Dkt. No. 34 at 5-6.) To

4  support her argument, Ms. Tran cites to the following language on her EEOC charge form: "I

5  want this charge filed with both the EEOC and the State or local Agency, if any." (Dkt. No. 31-1

6  at 117.) However, this language does not show that a work-sharing agreement exists between

7  the EEOC and the Washington State Human Rights Commission ("WSHRC").

8       To establish subject matter jurisdiction over her Title VII claims, a plaintiff must have

9  exhausted her administrative remedies by filing a timely charge with the EEOC. See e.g.

10 Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003), as amended (Jan. 2, 2004).

11 "Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180

12 days of the last act of discrimination." MacDonald v. Grace Church Seattle, 457 F.3d 1079,

13 1081-82 (9th Cir. 2006). "However, the limitations period is extended to 300 days if the plaintiff

14 first institutes proceedings with a 'State or local agency with authority to grant or seek relief

15 from such practice.'" Id. (citing 42 U.S.C. §2000e-5(e)(1).)

16      Ms. Tran filed her EEOC charge on July 20, 2012. (Dkt. No. 31-1.) Even with the

17 benefit of a 300-day filing period, Ms. Tran's first and second claims would still be time-barred.

18 Indeed, Ms. Tran concedes as much but argues that although her first and second claims are

19 outside of both the 180-day and 300-day filing period, "[NNI's] actions as described in these

20 claims contribute to Ms. Tran's claim of hostile work environment and therefore implicate the

21 continuing violations doctrine." (Dkt. No. 34 at 6.)

22      The Supreme Court significantly limited the applicability of the continuing violations

23 doctrine in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Supreme

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 6

1    Court held "discrete discriminatory acts are not actionable if time barred, even when they are

2    related to acts alleged in timely filed charges." 536 U.S. at 102.  The Supreme Court specifically

3    held that the following were discrete discriminatory acts: ". . . termination, failure to promote,

4    denial of transfer, or refusal to hire." Id. at 114.  The Supreme Court contrasted claims based on

5    these types of discrete acts with a claim of hostile work environment.  Id. at 115.  Because a

6    hostile work environment claim, by its very nature, involves repeated conduct, the Supreme

7    Court held a charge alleging a hostile work environment claim "will not be time barred so long

8    as all acts which constitute the claim are part of the same unlawful employment practice and at

9    least one act falls within the time period." Id. at 127.  The continuing violations doctrine does

10   not preserve Ms. Tran's first and second failure-to-promote claims because these claims are

11   based on "discrete acts." Id. at 114.  Accordingly, these claims are time-barred.

12          Likewise, even with the benefit of the 300-day filing period, Ms. Tran's third claim

13   would still be untimely on this record.  Washington has a fair employment practices ("FEP")

14   agency, see 29 C.F.R. §1601.80 (listing the Washington Human Rights Commission as an FEP

15   agency).  Where a document that constitutes a charge is initially presented to the EEOC in a state

16   with an FEP agency, the EEOC defers the document to the appropriate FEP agency so long as

17   the FEP agency has not waived its right to the 60-day period of exclusive processing.  29 C.F.R.

18   §1601.13(a)(4)(i).  A charge initially presented to the EEOC that is deferred to an FEP agency is

19   deemed to be filed with the EEOC: (1) upon expiration of 60 days after deferral; or (2) upon

20   termination of the FEP agency proceedings; or (3) upon waiver of the FEP agency's right to

21   exclusively process the charge, whichever is earliest.  29 C.F.R. §1601.13 (a)(4)(ii)(B).

22          Ms. Tran cites to no evidence that shows a work-sharing agreement exists between the

23   WSHRC and the EEOC.  (Dkt. No. 34 at 5.)  Ms. Tran also cites to no evidence that shows any

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 7

1  proceedings before the WSHRC were terminated before the end of the 60-day deferral period.

2  (Id.)  Ms. Tran cites to no evidence that shows the WSHRC waived its right to the 60-day period

3  of exclusive processing with respect to her EEOC charge or any claims contained therein.  (Id.)

4  Viewing the facts in a light most favorable to Ms. Tran, the Court assumes that Ms.

5  Tran's EEOC charge was deferred to the WSHRC on the same day that it was filed.

6  Accordingly, Ms. Tran's EEOC charge would have been effectively filed with the EEOC 60-

7  days after July 20, 2012, on September 18, 2012.  29 C.F.R. §1601.13 (a)(4)(ii)(B).  November

8  23, 2011 is 300-days before September 18, 2012.  Because Ms. Tran's third claim is based on

9  actions that occurred in October of 2011, this claim is untimely on this record.  Because Ms.

10  Tran's third claim—like her first and second claims—is based on a discrete act, this claim is not

11  preserved by the continuing violations doctrine.  Morgan, 536 U.S. at 122.

12  **D.  Ms. Tran's Fourth and Fifth Claims**

13  Ms. Tran's fourth claim is that NNI discriminated against her on the basis of sex and race

14  by failing to promote her to the RSM position in June 2012.  (Dkt. No. 1 at 18-19.)  Ms. Tran's

15  fifth claim is that NNI discriminated against her on the basis of sex and race by failing to

16  promote her to the RFT position in July 2012.  (Id. at 19-21.)

17  NNI contends Ms. Tran cannot establish a prima facie case of discrimination with respect

18  to her fourth and fifth claims because Ms. Tran did not apply for the June 2012 and July 2012

19  RSM and RFT positions.  (Dkt. No. 23 at 23-24.) While she does not dispute that she did not

20  apply for these positions, Ms. Tran argues that she "is not required to actually apply for

21  positions, specifically [sic] RFT positions, for which applying would have been futile."  (Dkt.

22  No. 34 at 7.)  Ms. Tran contends she "was told on several occasions that she would not be

23  supported if she applied by her direct manager, senior management or both."  (Id.)

24

1    A Title VII plaintiff need not apply for a job if the application would have been futile.

2  Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365-68 (1977).  In such situations, the

3  plaintiff is required to show: (1) that she was a potential of victim of unlawful discrimination;

4  and (2) that she would have applied for the job but for those discriminatory practices.  Gutowsky

5  v. County of Placer, 108 F.3d 256, 260 (9th Cir. 1997).

6    Ms. Tran cites to no evidence which shows that it would have been futile for her to apply

7  to the June 2012 RSM or the July 2012 RFT positions in light of discriminatory practices at NNI.

8  (Dkt. No. 34 at 7); see also Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is

9  genuinely disputed must support the assertion by . . . citing to particular facts in the record . . .")

10  Because Ms. Tran cannot simply rely on allegations in her complaint to oppose summary

11  judgment, the Court finds Ms. Tran fails to establish a prima facie case of discrimination with

12  respect to her fourth and fifth Title VII claims.

13    **E.  Ms. Tran's Sixth Claim**

14    NNI argues Ms. Tran's hostile work environment claim under Title VII fails as a matter

15  of law because Ms. Tran cannot establish a prima facie case for hostile work environment.  (Dkt.

16  No. 23 at 26-28.)  NNI argues, in the alternative, that even if Ms. Tran could establish a prima

17  facie case for hostile work environment under Title VII, the Ellerth-Faragher affirmative defense

18  would bar such a claim.  (Id. at 28.)

19    Ms. Tran's hostile work environment claim is based on the following events: (1)

20  comments made by an individual named Bill Gang to Ms. Tran; (2) Ms. Tran's direct manager

21  Mark Timothy's comments at Ms. Tran's 360 performance review that Ms. Tran was causing a

22  disruption and that her partner did not trust her; and (3) Mr. Timothy's use of the expression

23  "white bread" in front of Ms. Tran.  (Dkt. No. 34 at 12.)  Ms. Tran also argues NNI's "ancillary

24  actions" contributed to the alleged hostile work environment.  (Id.)

1    Ms. Tran does not explain how NNI's alleged "ancillary actions" (i.e. its failure to

2    promote Ms. Tran, its inconsistent application of its promotional criteria, etc.) created or

3    contributed to a hostile work environment.  (Id. at 12.)  Title VII's prohibitions against the

4    creation of a hostile work environment are intended to protect individuals from "discriminatory

5    intimidation, ridicule, and insult" in their work place.  McGinest v. GTE Serv. Corp., 360 F.3d

6    1103, 1112 (9th Cir. 2004).  The "ancillary actions" Ms. Tran alleges NNI engaged in are not the

7    types of behavior that give rise to a hostile work environment claim.

8    Likewise, Ms. Tran does not explain—nor can the Court determine—how Mr. Timothy's

9    comments at her 360 performance review constitute unwanted verbal or physical conduct on

10   account of sex and/or race that created or contributed to a hostile work environment.  (Dkt. No.

11   34 at 12); see also Manatt, 339 F.3d at 798.  Ms. Tran also does not explain what comments Mr.

12   Gang made to her or how any comments made by Mr. Gang constitute unwanted verbal or

13   physical conduct on account of sex and/or race.  (Dkt. No. 34 at 12.)  Likewise, the Court cannot

14   find any information regarding the nature or frequency of any comments Mr. Gang made to Ms.

15   Tran in Ms. Tran's deposition testimony.  (Dkt. No. 31-1.)

16   Even if the Court were to accept the remaining incident alleged by Ms. Tran as true—the

17   "white bread" comment allegedly made by Mr. Timothy—it would be insufficient to support a

18   prima facie case for hostile work environment.  Ms. Tran must show conduct by NNI "was

19   sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive

20   work environment."  Vasquez, 349 F.3d at 642.  The discrete incident alleged by Ms. Tran is not

21   severe or pervasive enough to create a hostile work environment and thereby violate Title VII.

22   See  McGinest, 360 F.3d at 1113 ("Simply causing an employee offense based on an isolated

23   comment is not sufficient to create actionable harassment.")  This is especially evident when the

24

1    Court compares it to incidents in other cases in which the Ninth Circuit has held there was no

2    hostile work environment under Title VII.  See e.g.  Kortan v. California Youth Authority, 217

3    F.3d 1104 (9th Cir. 2000) (holding there was no hostile work environment where a supervisor

4    called female employees "castrating b*tches," "Madonnas," or "Regina" on several occasions in

5    plaintiff's presence, and referred to plaintiff as "Medea," among other things).

6          The Court finds Ms. Tran fails to establish a prima facie case of hostile work

7    environment under Title VII because Ms. Tran fails to show conduct by NNI that was

8    sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

9    work environment.  Vasquez, 349 F.3d at 642.  Because the Court finds Ms. Tran fails to

10   establish a prima facie case of hostile work environment under Title VII, the Court does not

11   reach NNI's argument regarding the Ellerth-Faragher affirmative defense.

12          **F.  NNI's Counterclaim**

13          NNI argues Ms. Tran breached an implied-in-fact contract with NNI by leaving the

14   company voluntarily within two years of completing her MBA courses for which she received

15   tuition assistance and therefore owes NNI $15,311.34 plus interest thereon.  (Dkt. No. 23 at 30-

16   31.)  Ms. Tran admits in her deposition that she was aware that NNI's two-year repayment

17   requirement was a condition of NNI's agreement to provide her with tuition assistance.  (Dkt.

18   No. 31-1 at 80-81.)  Ms. Tran also concedes in her response to NNI's Motion for Summary

19   Judgment that an implied-in-fact agreement existed between her and NNI regarding tuition

20   assistance.  (Dkt. No. 34 at 13.)  Ms. Tran left her employment at NNI voluntarily in July of

21   2012, less than two years after she had completed her MBA courses, thereby breaching the

22   implied-in-fact agreement with NNI.  (Dkt. No. 31-1 at 115.)  However, Ms. Tran argues she is

23   not liable for any amounts owed because NNI breached the implied-in-fact agreement with her

24   by discriminating against her and because parties to an implied-in-fact agreement are bound by

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 11

1  the implied covenant of good faith and fair dealing.  (Dkt. No. 34 at 13.)  Ms. Tran cites to no

2  authority to support the proposition that any discrimination by NNI would excuse her of her

3  obligation to repay NNI for the tuition assistance she received.  Further, the Court has not made a

4  finding that NNI discriminated against Ms. Tran.  NNI is entitled to summary judgment on its

5  counter-claim.

6                                          **<u>Conclusion</u>**

7           Because Ms. Tran does not show issues of material fact exist with respect to her claims

8  or NNI's counter-claim, the Court GRANTS NNI's Motion for Summary Judgment.

9           The clerk is ordered to provide copies of this order to all counsel.

10          Dated this 11th day of March, 2015.

11

12                                          Marsha J. Pechman
                                           United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 12